**Barry D. and Sandra J. PEVSNER, Petitioners–Appellees,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.**

**No. 80–1096**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.
Unit A

Oct. 20, 1980.

**468**

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Acting Chief, Appellate Section, Tax Div., U.S. Dept. of Justice, Washington, D.C., Daniel F. Ross, Atty., John A. Dudeck, Jr., Dept. of Justice, Tax Div., Washington, D.C., for respondent–appellant.

Samuel R. Miller, Dallas, Tex., for petitioners–appellees.

Before AINSWORTH, GARZA and SAM D. JOHNSON, Circuit Judges.

SAM D. JOHNSON, Circuit Judge:

This is an appeal by the Commissioner of Internal Revenue from a decision of the United States Tax Court. The tax court upheld taxpayer's business expense deduction for clothing expenditures in the amount of $1,621.91 for the taxable year 1975.[1] We reverse.

Since June 1973 Sandra J. Pevsner, taxpayer,[2] has been employed as the manager of the Sakowitz Yves St. Laurent Rive Gauche Boutique located in Dallas, Texas. The boutique sells only women's clothes and accessories designed by Yves St. Laurent (YSL), one of the leading designers of women's apparel. Although the clothing is ready to wear, it is highly fashionable and expensively priced. Some customers of the boutique purchase and wear the YSL apparel for their daily activities and spend as much as $20,000 per year for such apparel.

As manager of the boutique, the taxpayer is expected by her employer to wear YSL clothes while at work. In her appearance,

---

1. The Commissioner determined a deficiency in federal income taxes in the amount of $508.84 for 1975.

2. Barry D. Pevsner, taxpayer's husband, is a party to this proceeding by virtue of having filed a joint tax return with taxpayer for the tax year 1975.

she is expected to project the image of an exclusive lifestyle and to demonstrate to her customers that she is aware of the YSL current fashion trends as well as trends generally. Because the boutique sells YSL clothes exclusively, taxpayer must be able, when a customer compliments her on her clothes, to say that they are designed by YSL. In addition to wearing YSL apparel while at the boutique, she wears them while commuting to and from work, to fashion shows sponsored by the boutique, and to business luncheons at which she represents the boutique. During 1975, the taxpayer bought, at an employee's discount, the following items: four blouses, three skirts, one pair of slacks, one trench coat, two sweaters, one jacket, one tunic, five scarves, six belts, two pairs of shoes and four necklaces. The total cost of this apparel was $1,381.91. In addition, the sum of $240 was expended for maintenance of these items.

Although the clothing and accessories purchased by the taxpayer were the type used for general purposes by the regular customers of the boutique, the taxpayer is not a normal purchaser of these clothes. The taxpayer and her husband, who is partially disabled because of a severe heart attack suffered in 1971, lead a simple life and their social activities are very limited and informal. Although taxpayer's employer has no objection to her wearing the apparel away from work, taxpayer stated that she did not wear the clothes during off-work hours because she felt that they were too expensive for her simple everyday lifestyle. Another reason why she did not wear the YSL clothes apart from work was to make them last longer. Taxpayer did admit at trial, however, that a number of the articles were things she could have worn off the job and in which she would have looked "nice."

On her joint federal income tax return for 1975, taxpayer deducted $990 as an ordinary and necessary business expense with respect to her purchase of the YSL clothing

and accessories. However, in the tax court, taxpayer claimed a deduction for the full $1381.91 cost of the apparel and for the $240 cost of maintaining the apparel. The tax court allowed the taxpayer to deduct both expenses in the total amount of $1621.91. The tax court reasoned that the apparel was not suitable to the private lifestyle maintained by the taxpayer. This appeal by the Commissioner followed.

The principal issue on appeal is whether the taxpayer is entitled to deduct as an ordinary and necessary business expense the cost of purchasing and maintaining the YSL clothes and accessories worn by the taxpayer in her employment as the manager of the boutique. This determination requires an examination of the relationship between Section 162(a) of the Internal Revenue Code of 1954, which allows a deduction for ordinary and necessary expenses incurred in the conduct of a trade or business, and Section 262 of the Code, which bars a deduction for all "personal, living, or family expenses." Although many expenses are helpful or essential to one's business activities — such as commuting expenses and the cost of meals while at work — these expenditures are considered inherently personal and are disallowed under Section 262. *See, e. g. United States v. Correll*, 389 U.S. 299, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967); *Commissioner v. Flowers*, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1946).

The generally accepted rule governing the deductibility of clothing expenses is that the cost of clothing is deductible as a business expense only if: (1) the clothing is of a type specifically required as a condition of employment, (2) it is not adaptable to general usage as ordinary clothing, and (3) it is not so worn. *Donnelly v. Commissioner*, 262 F.2d 411, 412 (2d Cir. 1959).[3]

In the present case, the Commissioner stipulated that the taxpayer was required by her employer to wear YSL clothing and

---

**3.** When the taxpayer is prohibited from wearing the clothing away from work a deduction is normally allowed. *See Harsaghy v. Commis-* *sioner*, 2 T.C. 484 (1943). However, in the present case no such restriction was placed upon the taxpayer's use of the clothing.

that she did not wear such apparel apart from work. The Commissioner maintained, however, that a deduction should be denied because the YSL clothes and accessories purchased by the taxpayer were adaptable for general usage as ordinary clothing and she was not prohibited from using them as such. The tax court, in rejecting the Commissioner's argument for the application of an objective test, recognized that the test for deductibility was whether the clothing was "suitable for general or personal wear" but determined that the matter of suitability was to be judged subjectively, in light of the taxpayer's lifestyle. Although the court recognized that the YSL apparel "might be used by some members of society for general purposes," it felt that because the "wearing of YSL apparel outside work would be inconsistent with . . . [taxpayer's] lifestyle," sufficient reason was shown for allowing a deduction for the clothing expenditures.

In reaching its decision, the tax court relied heavily upon *Yeomans v. Commissioner*, 30 T.C. 757 (1958). In *Yeomans*, the taxpayer was employed as fashion coordinator for a shoe manufacturing company. Her employment necessitated her attendance at meetings of fashion experts and at fashion shows sponsored by her employer. On these occasions, she was expected to wear clothing that was new, highly styled, and such as "might be sought after and worn for personal use by women who make it a practice to dress according to the most advanced or extreme fashions." 30 T.C. at 768. However, for her personal wear, Ms. Yeomans preferred a plainer and more conservative style of dress. As a consequence, some of the items she purchased were not suitable for her private and personal wear and were not so worn. The tax court allowed a deduction for the cost of the items that were not suitable for her personal wear. Although the basis for the decision in *Yeomans* is not clearly stated, the tax court in the case *sub judice* determined that

> [a] careful reading of *Yeomans* shows that, without a doubt, the Court based its decision on a determination of Ms. Yeomans' lifestyle and that the clothes were

not suitable for her use in such lifestyle. Furthermore, the Court recognized that the clothes Ms. Yeomans purchased were suitable for wear by women who customarily wore such highly styled apparel, but such fact did not cause the court to decide the issue against her. Thus, *Yeomans* clearly decides the issue before us in favor of the petitioner.

T.C. Memo 1979–311 at 9–10.

■ Notwithstanding the tax court's decision in *Yeomans*, the Circuits that have addressed the issue have taken an objective, rather than subjective, approach. *Stiner v. United States*, 524 F.2d 640, 641 (10th Cir. 1975); *Donnelly v. Commissioner*, 262 F.2d 411, 412 (2d Cir. 1959). An objective approach was also taken by the tax court in *Drill v. Commissioner*, 8 T.C. 902 (1947). Under an objective test, no reference is made to the individual taxpayer's lifestyle or personal taste. Instead, adaptability for personal or general use depends upon what is generally accepted for ordinary street wear.

The principal argument in support of an objective test is, of course, administrative necessity. The Commissioner argues that, as a practical matter, it is virtually impossible to determine at what point either price or style makes clothing inconsistent with or inappropriate to a taxpayer's lifestyle. Moreover, the Commissioner argues that the price one pays and the styles one selects are inherently personal choices governed by taste, fashion, and other unmeasurable values. Indeed, the tax court has rejected the argument that a taxpayer's personal taste can dictate whether clothing is appropriate for general use. *See Drill v. Commissioner*, 8 T.C. 902 (1947). An objective test, although not perfect, provides a practical administrative approach that allows a taxpayer or revenue agent to look only to objective facts in determining whether clothing required as a condition of employment is adaptable to general use as ordinary streetwear. Conversely, the tax court's reliance on subjective factors provides no concrete guidelines in determining the deductibility of clothing purchased as a condition of employment.

In addition to achieving a practical administrative result, an objective test also tends to promote substantial fairness among the greatest number of taxpayers. As the Commissioner suggests, it apparently would be the tax court's position that two similarly situated YSL boutique managers with identical wardrobes would be subject to disparate tax consequences depending upon the particular manager's lifestyle and "socio–economic level." This result, however, is not consonant with a reasonable interpretation of Sections 162 and 262.

For the reasons stated above, the decision of the tax court upholding the deduction for taxpayer's purchase of YSL clothing is reversed. Consequently, the portion of the tax court's decision upholding the deduction for maintenance costs for the clothing is also

REVERSED.