T.C. Summary Opinion 2018-58

UNITED STATES TAX COURT

COREY V. TRIGGS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14824-16S.                    Filed December 26, 2018.

Corey V. Triggs, pro se.

<u>Thomas R. Mackinson</u>, <u>Trent D. Usitalo</u>, and <u>Tyson R. Smith</u>, for respondent.

SUMMARY OPINION

LEYDEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated March 28, 2016, the Internal Revenue Service (IRS)[2] determined a deficiency in Mr. Triggs' 2013 Federal income tax of $6,118 and a section 6662(a) accuracy-related penalty of $1,223.60.  After concessions,[3] the issues for decision are whether Mr. Triggs is:  (1) entitled to deduct various unreimbursed employee expenses and (2) liable for the section 6662(a) accuracy-related penalty.

The Court holds that Mr. Triggs is:  (1) entitled to deduct some, but not all, of the unreimbursed employee expenses and (2) not liable for the section 6662(a)

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The Court uses the term "IRS" to refer to administrative actions taken outside of these proceedings.  The Court uses the term "respondent" to refer to the Commissioner of Internal Revenue, who is the head of the IRS and is respondent in this case, and to refer to actions taken in connection with this case.

[3]At trial respondent conceded that Mr. Triggs is allowed a deduction for union dues of $1,974, which he claimed as unreimbursed employee expenses. Neither in his petition nor at trial did Mr. Triggs challenge the disallowance of a deduction for tax preparation fees of $225.  Therefore, the issue is deemed conceded.  See Rule 34(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded.").

accuracy-related penalty because he has proven that he acted with reasonable cause and in good faith.

Background

Some of the facts have been stipulated and are so found. Mr. Triggs resided in California when he timely filed his petition.

I.      Employment During 2013

During 2013 Mr. Triggs worked in construction as an employee of Dome Construction Corp. (Dome), whose office was in South San Francisco, California. Mr. Triggs lived in Vallejo, California, approximately 41 miles from Dome's office.

Mr. Triggs belonged to a union, whose union hall was in Martinez, California. The union, not Dome, provided Mr. Triggs with his construction site assignments. Mr. Triggs would drive from his home in Vallejo to the union hall in Martinez to receive his construction site assignments. The Court takes judicial notice that the union hall in Martinez was approximately 13 miles from Mr. Triggs' home in Vallejo.

During 2013 Mr. Triggs was assigned to work at construction sites in the following California cities:  (1) San Jose, (2) Mountain View, (3) South

San Francisco, (4) Pleasanton, and (5) Hayward.[4] The parties stipulated that the construction site in Mountain View was approximately 65 miles from Mr. Triggs' home. The Court takes judicial notice that the construction sites in San Jose, South San Francisco, Pleasanton, and Hayward were approximately 69 miles, 39 miles, 42 miles, and 40 miles, respectively, from Mr. Triggs' home.

If the construction work lasted more than a week at the San Jose or the Mountain View construction site, Mr. Triggs would drive to the construction site Monday morning, stay in a hotel overnight Monday through Thursday, and drive home Friday after completing his work. Mr. Triggs would stay at his home for the weekend. Mr. Triggs paid for the overnight hotel stays using a credit card, a checking account debit card, or cash. Mr. Triggs provided checking account statements showing the amounts he paid with his checking account debit card to stay in hotels when working at construction sites in San Jose and Mountain View during 2013.

---

[4]The parties stipulated that Mr. Triggs worked at a construction site in Santa Clara, California, during 2013. However, Dome's records do not show that Mr. Triggs worked at a construction site in Santa Clara during 2013. The Court will disregard the parties' stipulation. See Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989) ("We may disregard stipulations between parties where justice requires it if the evidence contrary to the stipulation is substantial or the stipulation is clearly contrary to facts disclosed by the record.").

Dome maintained records of the total number of hours Mr. Triggs worked each weekly pay period during 2013. The records do not list the number of hours that Mr. Triggs worked each day during the weekly period. The numbers of hours ranged from a low of 16 to a high of 52 and suggests that Mr. Triggs generally worked 8-hour days. Dome's records did not indicate whether Mr. Triggs' job required him to sleep or rest during any day of any pay period so as to require him to stay at a hotel.

Mr. Triggs' job required him to wear certain protective clothing, including steel-toed boots, construction worker overalls, gloves, prescription safety glasses, and a hardhat. The construction worker overalls prevented his regular clothes from getting caught in saws, and they had a safety coating to prevent them from igniting by sparks. During 2013 Mr. Triggs paid $152 for the steel-toed boots and $260.73 for the construction worker overalls and gloves. Mr. Triggs did not provide any evidence to substantiate the amount he paid for the prescription safety glasses or a hardhat.

Mr. Triggs was also occasionally required to purchase tools to perform his construction work. During 2013 Mr. Triggs paid $321.15 for various small tools.

The parties stipulated a letter from Dome stating that it did not have a formal reimbursement policy and that it determined reimbursements on a facts and

circumstances basis. The stipulated letter states that Dome did not reimburse any of Mr. Triggs' work-related travel, including overnight hotel stays. The stipulated letter does not mention any specific reimbursement policy for protective clothing or tools purchased by employees.

II.     2013 Tax Return

Mr. Triggs hired an accountant, as he had for 18 years, who prepared and timely filed his 2013 Federal income tax return. On Schedule A, Itemized Deductions, and, as relevant here, Mr. Triggs reported unreimbursed employee expenses of $35,746.

In a statement attached to his 2013 tax return Mr. Triggs reported his unreimbursed employee expenses of $35,746 as follows: (1) expenses from Form 2106, Employee Business Expenses, of $28,544; (2) union and professional dues of $1,974; (3) uniforms and protective clothing expenses of $2,641; (4) tool expenses of $327; (5) business telephone call expenses of $1,800; and (6) miscellaneous small tool expenses of $460. The expenses of $28,544 reported on the Form 2106 attached to the 2013 tax return consisted of the following:

(1) vehicle expenses of $4,088;[5] (2) travel expenses (not including meals) of $23,016;[6] and (3) business expenses of $1,440.

In his petition Mr. Triggs challenged the IRS' disallowance of the deduction of the unreimbursed employee expenses and the accuracy-related penalty.

Discussion

I.     Burden of Proof

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving it incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under section 7491(a)(1), the burden of proof may shift to the Commissioner if the taxpayer produces credible evidence with respect to any relevant factual issue and meets other requirements. Mr. Triggs has neither argued that section 7491(a)(1) applies nor

---

[5]On the Form 2106 Mr. Triggs reported that during 2013 he drove his vehicle a total of 39,360 miles and of those total miles he drove his vehicle 7,236 miles for business. The reported vehicle expenses of $4,088 were calculated by multiplying 7,236, the reported business miles, by 56.5 cents. See Notice 2012-72, sec. 2, 2012-50 I.R.B. 673, 673 (updating the optional standard mileage rate for 2013 to 56.5 cents).

[6]Mr. Triggs' accountant calculated the travel expense deduction by using a Federal per diem rate for the city in which the construction site was located to account for his lodging, gas, and other travel expenses. See Rev. Proc. 2011-47, 2011-42 I.R.B. 520.

established that its requirements are met. The burden of proof remains with Mr. Triggs.

As the Court has observed in countless opinions, deductions are a matter of legislative grace, and a taxpayer bears the burden of proving entitlement to any claimed deduction. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). The taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to some statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965); sec. 1.6001-1(a), Income Tax Regs.

## II.     Unreimbursed Employee Expenses

Mr. Triggs deducted unreimbursed employee expenses of $35,746 on his 2013 tax return. A taxpayer may deduct ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Sec. 162(a). Generally, the performance of services as an employee constitutes a trade or business. O'Malley v. Commissioner, 91 T.C. 352, 363-364 (1988); Primuth v. Commissioner, 54 T.C. 374, 377 (1970). If as a condition of employment an

employee is required to incur certain expenses, then the employee is entitled to deduct those expenses to the extent the expenses are not subject to reimbursement. See Lucas v. Commissioner, 79 T.C. 1, 6 (1982); Fountain v. Commissioner, 59 T.C. 696, 708 (1973); Podems v. Commissioner, 24 T.C. 21, 22-23 (1955). Section 262(a) generally disallows a deduction for personal, living, or family expenses.

As a general rule, if a taxpayer establishes that he incurred a trade or business expense contemplated by section 162(a) but is unable to adequately substantiate the precise amount, the Court may estimate the amount and allow a deduction to that extent. Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930). In order for the Court to estimate the amount of an expense there must be some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Otherwise, an allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

However, section 274 overrides the Cohan rule with regard to certain expenses, including travel and certain listed property,[7] which if otherwise allowable are subject to strict substantiation rules. See sec. 274(d); Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir.

---

[7]Listed property includes any "passenger automobile". Sec. 280F(d)(4).

1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). For expenses relating to passenger automobiles, a taxpayer must substantiate with adequate records or sufficient evidence corroborating his own statement: (1) the amount of each separate expense;[8] (2) the mileage for each business use of the passenger automobile and the total mileage for all purposes during the taxable period; (3) the date of the business use; and (4) the business purpose of the use. See sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

For expenses relating to lodging for travel away from home a taxpayer must substantiate with adequate records or sufficient evidence corroborating his own statement: (1) the cost of the lodging; (2) the dates of departure and return for each trip away from home and the number of days away from home spent on business; (3) the name of the city or town or other similar destination; and (4) the business reason for travel or the nature of the business benefit derived or expected to be derived as a result of the travel. See sec. 1.274-5T(b)(1), (2), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46015 (Nov. 6, 1985).

---

[8]In lieu of substantiating actual passenger automobile expenses, a taxpayer may calculate them by using the standard mileage rate established by the Commissioner. See sec. 1.274-5(j)(2), Income Tax Regs.

Substantiation by adequate records requires the taxpayer to maintain an account book, a diary, a log, a statement of expense, trip sheets, or a similar record prepared contemporaneously with the use or expenditure and documentary evidence (e.g., receipts or bills) of certain expenditures. See sec. 1.274-5(c)(2)(iii), Income Tax Regs.; sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). Substantiation by other sufficient evidence requires the production of corroborative evidence in support of the taxpayer's statement, whether written or oral, specifically detailing the required elements or use. Sec. 1.274-5(c)(2)(iii), Income Tax Regs.; sec. 1.274-5T(c)(3)(i)(A) and (B), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985).

Mr. Triggs did not provide any testimony or other evidence to substantiate a deduction for the unidentified business expenses of $1,440 or the business telephone call expenses of $1,800. Therefore, he is not entitled to a deduction for these expenses.

Respondent argued at trial that the stipulated letter from Dome does not specify which expenses were or were not subject to reimbursement and that Mr. Triggs had not shown that the expenses he deducted were not subject to reimbursement. Mr. Triggs credibly testified that he was not entitled to seek reimbursement from Dome for the other unreimbursed employee expenses.

Accordingly, the Court considers the remaining unreimbursed employee expense deductions in dispute.

A.     Travel Expenses

Mr. Triggs claimed a deduction for travel expenses for miles he drove and lodging of $23,016. Mr. Triggs testified that his accountant calculated the travel expenses by using a Federal per diem rate for the city in which the construction site was located to account for his lodging, gas, and other travel expenses.[9] See Rev. Proc. 2011-47, 2011-42 I.R.B. 520.

Respondent does not dispute whether the travel expenses were ordinary and necessary or incurred in pursuit of Mr. Triggs' trade or business of being an employee. Rather, respondent's position with respect to the disallowed travel expense deduction is that Mr. Triggs was not "away from home" because Dome's office in South San Francisco was Mr. Triggs' "tax home". Mr. Triggs argued that his residence in Vallejo was his "tax home".

Assuming (without finding) that Mr. Triggs' "tax home" was his residence, the Court nevertheless concludes Mr. Triggs is not entitled to a deduction for

_____

[9]An employee or independent contractor may use a Federal per diem rate to calculate unreimbursed meal and incidental expenses incurred while traveling away from home instead of substantiating actual expenses. Rev. Proc. 2011-47, sec. 1, 2011-42 I.R.B. at 520. An employee or independent contractor may not use the Federal per diem rate to substantiate unreimbursed lodging expenses. Id.

vehicle expenses or lodging expenses because he has not substantiated the mileage he drove or that he was required to sleep or rest on the nights for which he paid for hotel stays in order to meet the demands of his work.

### 1. Vehicle Expenses

Mr. Triggs claimed a deduction for vehicle expenses of $4,088 on the basis of the standard mileage rate. However, Mr. Triggs did not maintain a contemporaneous log of the miles he drove to any of the construction sites, the dates he drove, and the business purpose of driving. He did not provide any evidence to corroborate his testimony that he drove to and from the construction sites. Therefore, Mr. Triggs is not entitled to the claimed deduction of $4,088 for vehicle expenses.

### 2. Lodging Expenses

Generally, lodging expenses are personal expenses and not deductible. Sec. 262. However, if the nature of an employee's work requires him to be away from his tax home substantially longer than an ordinary day's work and during the released time the employee needs to sleep or rest to meet the demands of his job, he may deduct the costs of lodging. The standard applied to an employee whose demands of his job require him to obtain sleep or rest while away from his tax

home is referred to as the "sleep or rest rule".  Williams v. Patterson, 286 F.2d 333, 340 (5th Cir. 1961).

For Mr. Triggs' lodging expenses to be deductible he must first show that his trips required him to stay overnight or that the demands of his job required him to sleep or rest.  United States v. Correll, 389 U.S. 299, 302-303 (1967); Rehman v. Commissioner, T.C. Memo. 2013-71, at *15.  Mr. Triggs did not provide evidence to prove that the demands of his job required him to sleep or rest each day of the week from Monday through Thursday during the weeks he paid for hotel stays in San Jose and Mountain View.  The Dome records suggest that his usual work day lasted eight hours.  Cf. Bissonnette v. Commissioner, 127 T.C. 124, 133 (2006) (explaining that a ferryboat captain who worked 15-17 hours a day with a 6-7 hour layover was required to obtain sleep or rest to meet the demands of his job).  The record indicates Mr. Triggs' home was no more than a few hours' drive from either San Jose or Mountain View.  Mr. Triggs has not proven that he was required by the demands of his job to sleep or rest in either San Jose or Mountain View.  Therefore, Mr. Triggs is not entitled to the claimed deduction for lodging expenses for hotel stays.

B.    Protective Clothing Expenses

Mr. Triggs deducted $2,641 for uniform and protective clothing expenses. Clothing costs are deductible as ordinary and necessary business expenses under section 162 only if a taxpayer proves that "(1) the clothing is of a type specifically required as a condition of employment, (2) it is not adaptable to general usage as ordinary clothing, and (3) it is not so worn." Pevsner v. Commissioner, 628 F.2d 467, 469 (5th Cir. 1980), rev'g T.C. Memo. 1979-311; see Yeomans v. Commissioner, 30 T.C. 757, 767 (1958); Deihl v. Commissioner, T.C. Memo. 2005-287, 2005 Tax Ct. Memo LEXIS 285, at *74-*76.

Mr. Triggs credibly testified that he paid $152 for steel-toed boots and $260.73 for construction worker overalls and gloves and that these items were required as part of his employment.  He also credibly testified that he needed the items for safety reasons when working at the construction sites and that the boots and protective clothing were not suitable or worn for general or personal wear. Mr. Triggs is entitled to a deduction of $412.73 for these expenses.  Mr. Triggs did not provide any evidence to substantiate the amount he paid for the prescription safety glasses or a hardhat and, therefore, the remaining claimed deduction is disallowed.

C.    Tools and Miscellaneous Small Tool Expenses

Mr. Triggs deducted $327 for tool expenses and $460 for miscellaneous small tool expenses. Mr. Triggs did not present any evidence to substantiate the claimed deduction for tool expenses of $327. The Court is unable to estimate the amount of those expenses. See Cohan v. Commissioner, 39 F.2d at 544. Accordingly, Mr. Triggs is not entitled to this claimed deduction.

At trial Mr. Triggs presented receipts totaling $321.15 for the following small tools: (1) battery pack, $107.54; (2) wrench set, $33.06; (3) an assortment of small tools, $101.77; (4) voltage detector, screw set, and retractable knife, $58.16; and (5) rafter square and three long lip markers, $20.62. He credibly testified as to how he used these tools in his employment. Mr. Triggs is entitled to the claimed deduction of $321.15 for these small tool expenses.

III.    Accuracy-Related Penalty

Respondent determined the accuracy-related penalty for 2013 because Mr. Triggs' underpayment was due to a substantial understatement of income tax or negligence or disregard of rules and regulations. See sec. 6662(a) and (b)(1) and (2). A taxpayer may be liable for a 20% accuracy-related penalty on the portion of an underpayment of income tax attributable to a substantial understatement of income tax or to negligence or disregard of rules or regulations. Sec. 6662(a)-(d).

Only one section 6662 accuracy-related penalty may be imposed with respect to any given portion of an underpayment, even if that portion is attributable to more than one type of conduct listed in section 6662(b). See New Phoenix Sunrise Corp. v. Commissioner, 132 T.C. 161, 187 (2009), aff'd, 408 F. App'x 908 (6th Cir. 2010); sec. 1.6662-2(c), Income Tax Regs. The Commissioner bears the burden of production with respect to a section 6662 accuracy-related penalty in any court proceeding with respect to the liability of any individual. Sec. 7491(c).

Section 6751(b)(1) provides that, subject to certain exceptions in section 6751(b)(2), no penalty shall be assessed unless the initial determination of the assessment is personally approved in writing by the immediate supervisor of the individual making the determination or a higher level official as the Secretary may designate. Written approval of the initial penalty determination under section 6751(b)(1) must be obtained no later than the date the notice of deficiency is issued or the date the Commissioner files an answer or amended answer asserting the penalty. Chai v. Commissioner, 851 F.3d 190, 221 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42; see also Graev v. Commissioner, 149 T.C. ___ (Dec. 20, 2017), supplementing and overruling in part 147 T.C. 460 (2016). Compliance with section 6751(b)(1) is part of the Commissioner's burden of

production in any deficiency case in which a penalty subject to section 6751(b)(1) is asserted. Chai v. Commissioner, 851 F.3d at 221.

Assuming (without finding) that respondent has met his burden of production in the instant case, the Court nevertheless concludes that Mr. Triggs carried his burden with respect to reasonable cause and good faith.[10]

---

[10]At trial respondent failed to offer any evidence of compliance with sec. 6751(b) to support the imposition of the sec. 6662(a) accuracy-related penalty in dispute. After this case was tried the Court issued its Opinion in Graev v. Commissioner, 149 T.C. ___ (Dec. 20, 2017), supplementing and overruling in part 147 T.C. 460 (2016). By order dated March 16, 2018, the Court directed respondent either to move to reopen the record to provide evidence of compliance by the IRS with sec. 6751(b) with respect to the accuracy-related penalty or to advise the Court of respondent's position with respect to the sec. 6662(a) accuracy-related penalty for 2013.

On March 30, 2018, respondent filed a motion to reopen the record to assert that the sec. 6662(a) accuracy-related penalty had been automatically calculated and that respondent did not have the burden of producing evidence of managerial approval. Respondent's motion to reopen the record stated that Mr. Triggs objected to his motion. On May 9, 2018, respondent filed a first supplement to motion to reopen the record. On July 5, 2018, Mr. Triggs filed a response to respondent's motion to reopen the record, as supplemented.

The decision to reopen the record to admit additional evidence is a matter within the discretion of the trial court. Zenith Radio Corp. v. Hazeltine Research Inc., 401 U.S. 321, 331 (1971); see also Nor-Cal Adjusters v. Commissioner, 503 F.2d 359, 363 (9th Cir. 1974), aff'g T.C. Memo. 1971-200. This Court, however, will not exercise that discretion unless the evidence that a party seeks to admit to the record is material and will aid the Court in determining the outcome of the case; the record will not be reopened to admit evidence that is merely cumulative or impeaching. Butler v. Commissioner, 114 T.C. 276, 287 (2000), abrogated on other grounds, Porter v. Commissioner, 132 T.C. 203 (2009); see SEC v. Rogers, 790 F.2d 1450, 1460 (9th Cir. 1986).

(continued...)

A penalty will not be imposed under section 6662(a) if a taxpayer establishes that he acted with reasonable cause and in good faith. Sec. 6664(c)(1). Circumstances that indicate reasonable cause and good faith include reliance on the advice of a tax professional or an honest misunderstanding of the law that is reasonable in the light of all the facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.; see Higbee v. Commissioner, 116 T.C. 438, 449 (2001). Relevant facts and circumstances for the Court to consider include the knowledge and experience of the taxpayer. Sec. 1.6664-4(b)(1), Income Tax Regs. For a taxpayer to rely reasonably on advice so as possibly to negate a section 6662(a) accuracy-related penalty, the taxpayer must prove: (1) the adviser was a competent professional who had sufficient expertise to justify reliance; (2) the taxpayer provided necessary and accurate information to the adviser; and (3) the taxpayer actually relied in good faith on the adviser's judgment. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

---

[10](...continued)
Because the Court holds that Mr. Triggs acted in good faith and with reasonable cause, the evidence respondent seeks to enter into evidence is not material and will not aid the Court in determining whether Mr. Triggs is liable for the sec. 6662 accuracy-related penalty at issue. Accordingly, an order will be issued denying respondent's motion to reopen the record.

Mr. Triggs credibly testified that he relied upon his accountant's advice in claiming the disallowed unreimbursed employee expenses and that the accountant assured him that he could use the per diem amounts to calculate the expenses. Mr. Triggs also credibly testified that the same accountant had prepared his tax returns for the past 18 years. Mr. Triggs does not have any training in finance or a background in accounting. Additionally, respondent did not argue either in his pretrial memorandum or at trial that Mr. Triggs had not acted with reasonable cause and in good faith. The Court holds that Mr. Triggs has met his burden of proving he acted with reasonable cause and in good faith and is not liable for the accuracy-related penalty for 2013.

The Court has considered all of the parties' arguments, and, to the extent not addressed herein, the Court concludes that they are moot, irrelevant, or without merit.

To reflect the foregoing,

An appropriate order will be issued denying respondent's motion to reopen the record, and decision will be entered under Rule 155.